## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIM WILT, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : Civil Action No. _____ |
| | : |
| MAHONING TOWNSHIP | : |
| | : *Electronically Filed* |
| and | : |
| | : |
| T.S. SCOTT, Individually | : |
| | : |
| and | : |
| | : |
| WILLIAM LYNN, Individually | : |
| | : |
| Defendants. | : |
| | : |
| | : JURY TRIAL DEMANDED |
| | : |

## COMPLAINT FOR
## DECLARATORY, EQUITABLE, AND MONETARY RELIEF

Plaintiff, Kim Wilt (hereinafter "Ms. Wilt") claims damages upon a cause of action against the above-captioned Defendants for sex discrimination, First Amendment retaliation, and breach of contract whereof the following is a statement:

**JURISDICTION**

1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as a case arising under the laws of the United States. Jurisdiction is invoked pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* which provides for original jurisdiction of Ms. Wilt's claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

2.   On or about May 8, 2017, Ms. Wilt filed her third complaint with the United States Equal Employment Opportunity Commission, which was dually filed with the Pennsylvania Human Relations Commission.

3.   On August 10, 2017, Ms. Wilt received her Right to Sue letter from the United States Equal Employment Opportunity Commission.

4.   Therefore, Ms. Wilt has exhausted all administrative remedies and has taken all other steps necessary to bring this action before this Court.

**VENUE**

5.   Paragraphs 1 through 4 are incorporated herein by reference as though set forth in full.

6.   The actions complained of herein occurred within the jurisdiction of this Court and involve a Defendant who resides within its jurisdictional limits.

7.   Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and 1391(c) because one or more defendants can be found in the Middle District of Pennsylvania and events or omissions giving rise to Plaintiff's claims have occurred in the Middle District of Pennsylvania.

## **PARTIES**

8.   Paragraphs 1 through 7 are incorporated herein by reference as though set forth in full.

9.   Plaintiff, Kim Wilt, is a member of a protected class (sex – female), engaged in protected activity during her employment with Defendants, including filing two complaints with the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission.   Ms. Wilt is a lifelong resident of the Danville, Pennsylvania area, where she resides with her husband and children.

10.   Defendant Mahoning Township (hereinafter "Mahoning Township) is a Pennsylvania municipality with a principal place of business at 849 Bloom Road Danville, Pennsylvania 17821. At all times relevant hereto, Defendant Mahoning Township is engaged in commerce throughout the United States, employs in excess of 15 employees, is an employer pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq*. is liable for Plaintiff's damages, and is responsible for the acts of its supervisory employees.

11. Defendant T.S. Scott (hereinafter "Defendant Scott) is an adult male employed as a Supervisor with Mahoning Township and works at 849 Bloom Road Danville, Pennsylvania 17821. At all times relevant hereto, Defendant Scott exercised control over the terms, conditions, and privileges of Ms. Wilt's employment. He is being sued in his individual capacity for First Amendment retaliation against Ms. Wilt as enforced through Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983.

12. Defendant William Lynn (hereinafter "Defendant Lynn) is an adult male employed as a Supervisor with Mahoning Township and works at 849 Bloom Road Danville, Pennsylvania 17821. At all times relevant hereto, Defendant Lynn exercised control over the terms, conditions, and privileges of Ms. Wilt's employment. He is being sued in his individual capacity for First Amendment retaliation against Ms. Wilt as enforced through Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

13. Paragraphs 1 through 12 are incorporated herein by reference as though set forth in full.

14. Plaintiff, Kim Wilt, is a member of a protected class (sex – female).

15. Ms. Wilt is a lifelong resident of the Danville Pennsylvania area where Mahoning Township is located.

16.   After attending a year of college, Ms. Wilt applied for a position with Mahoning Township, which is located in Danville, Pennsylvania, Ms. Wilt's hometown.

17.   Ms. Wilt was hired on February 13, 1995 for a Secretary position for the Police Department at a rate of pay of $6.25 per hour.

18.   Ms. Wilt was the only female employed with the Township.

19.   Over the past twenty-two years, Ms. Wilt has performed successfully in her position with the Township and has never received any negative performance reviews or formal discipline.

20.   Over the past twenty-two years, Ms. Wilt has earned raises in pay, and she currently earns $22.27 per hour.

21.   Ms. Wilt is a member of a union.

22.   Ms. Wilt was the only female employee of the Township until December 31, 2015 when the Township hired a female police officer.

23.   Ms. Wilt is the only female employee with the Union, AFSCME.

24.   Until January 2017, Ms. Wilt was the lowest paid employee of the Township, despite having worked for the Township for over twenty years.

25.   Until January 2017, Ms. Wilt was the lowest paid employee with the Union.

26.   Ms. Wilt performs her job duties at the Mahoning Township building located at 849 Bloom Road, Danville, Pennsylvania 17821.

27.   The Mahoning Township Supervisors control the terms, conditions, and privileges of Ms. Wilt's employment.

28.   In June 2015, Ms. Wilt engaged in First Amendment protected speech by providing truthful testimony regarding an issue of public safety.

29.   Ms. Wilt reported that Mahoning Township police officers had been "huffing" aerosol inhalants on the job at the Mahoning Township building, and were engaged in an illegal wiretap in the workplace.

30.   On July 10, 2015, Ms. Wilt filed a complaint and charge of discrimination with the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission.

31.   After providing truthful testimony and reporting a matter of public concern, including to the Montour County District Attorney, Ms. Wilt was subjected to disparagement by the Township and in the local media.

32.   On April 19, 2016, Ms. Wilt filed a second complaint and charge of discrimination with the Pennsylvania Human Relations Commission and the United States Equal Employment Opportunity Commission.

33.   In July 2016, the Montour County Common Pleas judge appointed Ken Woodruff, Ms. Wilt's father, to a Township Supervisor position that was vacant.

34.     In November 2016, Ms. Wilt and the Township reached a settlement on Ms. Wilt's complaint of sex discrimination filed with the Pennsylvania Human Relations Commission.

35.     Given that the Township eventually disciplined and removed the police officers that were engaged in the prohibited activities and having reached a resolution to her complaints including an anti-retaliation provision, Ms. Wilt believed the Township would not retaliate against her or discriminate against her for her activity.

36.     On December 16, 2016, Defendant Supervisor Lynn advised the Mahoning Township Supervisors that they would be taking over the Water/Sewer Authority.

37.     Defendant Supervisor Lynn stated that the Supervisors are going to be raising the wages of Ms. Wilt and Bret LeVan (male employee of the Water/Sewer Authority) so that they would be equal to the other (male) employees of the Street Department.

38.     On January 10, 2017, Defendant Supervisor Lynn brought up the wage increase and told Ms. Wilt that her wages would be increased in February when they took over the Water/Sewer Authority.

39.   On January 17, 2017, Defendant Supervisors Lynn and Scott asked Ms. Wilt to come into work on her day off, January 20, 2017, to notarize documents for the Water/Sewer Authority take over.

40.   Ms. Wilt agreed to come into work, and Supervisor Lynn again stated that once the Water/Sewer takeover was complete, they would bring Bret LeVan into the union and bring her and his wages up to the current Street Department wages.

41.   Ms. Wilt learned that she had been paid significantly less than all the other male employees of the Township for over a decade.

42.   The male union employees were earning $4.00 per hour more than Ms. Wilt.

43.   This pay disparity results in Ms. Wilt being paid approximately $8,000.00 less the male union employees.

44.   Additionally, the pay disparity negatively affects Ms. Wilt's defined benefit retirement plan with the Township, as her retirement is based on her highest wages times years of service.

45.   On January 20, 2017, Defendant Supervisor Lynn and Scott asked whether Ms. Wilt would be seeking back pay for the 10 years that she was paid less than the other employees (all of whom were male).

46.   Ms. Wilt responded that she should be entitled to receive back pay especially since the Township just awarded two Street Department employees (both male) 10 years on longevity pay.

47.   Ms. Wilt requested her salary grade be reviewed and complained that she was not being paid equally to other, male employees.

48.   The other, employees with similar job responsibilities as Ms. Wilt, were treated more favorably than Ms. Wilt, and paid a higher grade and hourly rate

49.   Ms. Wilt presented the information on the pay disparity to the Township.

50.   On January 24, 2017, Ms. Wilt met with Melissa Kelso, the Township's outside counsel.

51.   Ms. Wilt specifically told Ms. Kelso that the union members (male) have previously stated that they did not think that a secretary should make as much as a Street Department workers.

52.   Ms. Kelso said that it was "silly for them to say that" and advised Ms. Wilt that she should have been brought up to the current Street Department wages in 1995.

53.   Ms. Kelso said that if there would be any back pay awarded to Ms, Wilt it would be for the two years prior to the Union coming in and creating the classification.

54. There was no union representative present during Ms. Wilt's meetings with the Township's attorney and supervisors regarding her pay increase.

55. The Township specifically agreed to pay Ms. Wilt two years of back pay and raise her hourly wages to the same as the male union employees.

56. Supervisor Woodruff did not participate in any actions or voting concerning Ms. Wilt's wage complaints.

57. On January 25, 2017, Ms. Wilt's union steward informed her that she was being given a release to sign and return, asking her sarcastically if she "was happy."

58. Ms, Wilt responded that she just want to be treated equally and to have a voice.

59. However, on February 2, 2017, the Township through two supervisors, Defendant Lynn and Defendant Scott, breached the agreement and denied Ms. Wilt's complaint of pay disparity, and refused to correct the discriminatory wages.

60. Furthermore, the Township claimed that Ms. Wilt's job duties were significantly different than other (male) employees who have to work in the "cold, heat, and elements" in "emergent situations."

61. The Township, in a letter signed by Defendant Bill Lynn and Defendant James T.S. Scott, then concluded that "Common sense supports the differing classifications between office work and outdoor labor."

62. Such a statement is direct evidence of sex discrimination: historically women have been employed in secretarial roles and are stereotypically paid less than the male employees who are paid more because these men brave the elements to provide labor outdoors.

63. As a further point of sex discrimination, after refusing to honor the agreement to pay Ms. Wilt equally and denying Ms. Wilt's complaint of pay disparity, the Township then hired a male, Bret J. LeVan, for a position with the Township and paid him significantly more than Ms. Wilt.

64. The position was not advertised or posted for internal or external candidates.

65. The Township entered into a four-year employment contract with Mr. LeVan beginning on February 6, 2017 and ending on February 5, 2021.

66. In the employment agreement, the Township claims Mr. LeVan is a managerial employee, but he does not supervise two or more full time employees.

67. It is believed that the Township designated Mr. LeVan as a "manager" in bad faith, to circumvent the collective bargaining agreement with AFSCME.

68.   The Township agreed to compensate Mr. LeVan at an hourly rate of $24.56 per hour for 2017.

69.   The Township agreed to increase Mr. LeVan's hourly rate of compensation each year thereafter, to a $25.75 per hour in 2018, $26.94 per hour in 2019, and $28.13 per hour in 2020.

70.   Additionally, despite designating Mr. LeVan as a "manager", the Township agreed to provide Mr. LeVan with overtime pay at one and a half times his normal hourly rate for hours worked in excess of forty (40) each work week.

71.   Furthermore, despite designating Mr. LeVan as a "manager," the Township agreed to pay Mr. LeVan on call pay for times he is required to report to the Township outside his normal work hours.

72.   For instance, if Mr. LeVan is required to perform work on a Sunday, he is compensated at a rate of two times his hourly rate for a minimum of two hours.

73.   The Township further agreed to provide Mr. LeVan with medical insurance and prescription drug coverage, dental insurance, and vision insurance.

74.   After Ms. Wilt made a complaint of sex discrimination and pay disparity, Defendant Lynn, Mahoning Township Supervisor, breached the settlement agreement entered into between Ms. Wilt and the Township.

75. On February 13, 2017 Mahoning Township Supervisor Lynn released the terms of the settlement agreement to a reporter, Chris Krepich, with the Press-Enterprise newspaper.

76. On February 14, 2017, the reporter texted Ms. Wilt asking whether she applied elsewhere for employment.

77. He advised, via text to Ms. Wilt, that Defendant Supervisor Scott was talking with him after the Township Meeting and told the reporter of Ms. Wilt's wage issues as well as that she applied for another job.

78. In February 2017, Defendant Supervisor Lynn complained to the newly hired Police Chief that Ms. Wilt was "causing trouble" and complaining to the union.

79. The Police Chief responded to the effect that Ms. Wilt was entitled to engage in union activity as a union member.

80. On March 1, 2017, Defendant Supervisors Lynn and Scott were asked to cease and desist in their hostile environment and behavior directed at Ms. Wilt.

81. The next day, March 2, 2017, Defendant Supervisors Lynn and Scott accused Ms. Wilt and her father (Supervisor Woodruff) of nepotism and made reference to a wage dispute.

82. When asked by members of the public about the wage dispute, Defendant Supervisor Scott stated that he could not provide any further information or he would get in trouble.

83. The Township then hired a part-time secretary and even paid the newly hired, part-time employee more than Ms. Wilt who was with the Township for over twenty years.

84. On March 5, 2017, Defendant Supervisor Scott contacted a township resident and told him that Ms. Wilt's father, Supervisor Woodruff, is "losing it", making a negative reference to his mental state.

85. During a snowstorm on March 14-15, 2017, Ms. Wilt shoveled the steps and sidewalk and around the doors at the Township Building.

86. On March 15, 2017, Defendant Supervisor Scott questioned who shoveled and when Ms. Wilt responded that she did, he cursed, stating "why the hell did you do that…don't think you can add that to your job description."

87. On March 28, 2017, Defendant Supervisor Lynn informed the Press-Enterprise newspaper of Ms. Wilt's Pennsylvania Human Relations Commission settlement with the Township.

88. Defendant Supervisor Lynn told the Press-Enterprise of Ms. Wilt's equal pay claim and said "she already got [disclosed specific monetary amount] what more does she want."

89.   Defendant Supervisor Lynn stated this on two separate occasions.

90.   The Pennsylvania Human Relations Commission agreement contains a specific clause regarding confidentiality prohibiting the Supervisors, including Defendant Supervisor Lynn, from discussing the settlement with anyone.

91.   Defendant Supervisor Lynn also ordered a Mahoning Township patrolman to review the security cameras to surveill Ms. Wilt during her employment with the Township.

92.   The Township continues to refuse to pay Ms. Wilt equally to her male counterparts, despite performing substantially equal jobs with respect to skill, effort and responsibility.

93.   Defendants' actions against Ms. Wilt were intentional, willful, and malicious, and Ms. Wilt has suffered economic losses, including loss of compensation and benefits, compensatory damages, consequential damages, and incurred expenses for attorneys' fees and costs.


## COUNT I

### Claim Under 42 U.S.C. § 1983 for
### First Amendment Retaliation

***Against Defendant Lynn and Defendant Scott, Collectively and Individually***

94.    Paragraphs 1 through 93 are incorporated herein by reference as though set forth in full.

95.    Plaintiff is an adult citizen of the United States, holding certain rights, privileges, and immunities, pursuant to the First Amendment of the United States Constitution, among them, the right of free expressive association and the right to petition the Government for redress of grievances.

96.    Plaintiff is employed as a Secretary with a government employer, Mahoning Township Pennsylvania.

97.    As more fully outlined herein, during her employment with Mahoning Township, Ms. Wilt engaged in protected activity and exercised her First Amendment Rights.

98.    Ms. Wilt's protected activity included complaining internally to Mahoning Township, reporting the actions of the Township and its supervisors and employees to outside agencies, including to the Attorney General of Pennsylvania and Montour County District Attorney.

99.    Ms. Wilt's speech was a matter of public concern.

100.    Ms. Wilt's interest in the speech outweighs the Defendants' concern with the alleged effective and efficient fulfillment of its responsibilities to the public.

101.    Defendants' investigation into Ms. Wilt, harassment of Ms. Wilt, breach of agreements with Ms. Wilt, disclosure of confidential information to the press and media regarding Ms. Wilt, and refusal to fairly compensate Ms. Wilt would not have taken place in the absence of Ms. Wilt's protected activity.

102.    Defendants acted under color of law and subjected Ms. Wilt to deprivation of rights, privileges, or immunities secured by the Constitution and laws and while doing so acted under color of law.

103.    Each and every of these Defendants were personally involved, by either person direction, actual knowledge and acquiescence, or direct unlawful retaliation against Ms. Wilt in violation of the First Amendment.

104.    Defendant Scott, who was the Supervisor at Mahoning Township at all times relevant hereto, was responsible for the adverse actions against Ms. Wilt by exercising personal direction, actual knowledge and acquiescence, and direct retaliation.  Defendant Scott personally directed and sanctioned disparate wages to be paid to Ms. Wilt and breach of agreements involving Ms. Wilt.

105.    Defendant Lynn, who was the Supervisor at Mahoning Township at all times relevant hereto, was responsible for the adverse actions against Ms. Wilt by exercising personal direction, actual knowledge and acquiescence,

and direct retaliation.  Defendant Lynn personally directed and sanctioned disparate wages to be paid to Ms. Wilt and breach of agreements involving Ms. Wilt.

106. These Defendants violated Ms. Wilt's First Amendment Rights when they retaliated against Ms. Wilt based on her exercise of free speech rights under the First Amendment to the U.S. Constitution after engaged in protected activity.

107. Ms. Wilt's speech was protected by the First Amendment of the United States Constitution and was based on a matter of public concern, not only of personal interest.

108. Ms. Wilt, as a public employee, did not shed her First Amendment rights at the Township doors.

109. She spoke out on subjects that the Defendants deemed inappropriate and subjected Ms. Wilt to a series of on-going, adverse actions, in retaliation for her exercise of First Amendment Rights, as more fully outlined herein.

110. Defendants' conduct--including harassing Ms. Wilt, disparaging Ms. Wilt, and refusing to pay her fairly and equally e--was motivated or substantially caused by Ms. Wilt's exercise of free speech.

111. Defendants violated clearly established rights of which a reasonable person would have known.

112.   Defendants had a custom of persistent and widespread retaliatory practices against employees who exercise their First Amendment Rights.

113.   Defendants should know or should have known that Ms. Wilt's speaking out about the Township's violations of state and federal law is a matter of public concern.

114.   Defendants acted maliciously and were improperly motivated by Ms, Wilt's speech on matters of public concern which was a substantial or motivating factor in subjecting Ms. Wilt to on-going adverse actions as more fully outlined herein.

115.   Ms. Wilt's interest in her speech outweighs the Defendants' countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption.

116.   Ms. Wilt's protected activity was a substantial or motivating factor in the Defendants' retaliatory actions.

117.   Defendants' actions denigrated Ms. Wilt's competence as a professional and impugned Ms. Wilt's professional reputation to place a significant roadblock on Ms. Wilt's continued ability to practice her profession.

118.   This is the only forum available to Ms. Wilt to redress her grievances against Defendants.

119.   Additionally, these Defendants, knowing that Ms. Wilt was attempting to exercise her rights to free speech, violated Ms. Wilt of her life, liberty, and or property without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution; these actions were so ill-conceived or malicious that it shocks the conscious.

120.   As a vested municipal employee, Ms. Wilt has a property interest in continued employment with the municipality, along with vested pension rights.

121.   Ms. Wilt has not been afforded procedural due process after defamatory statements were made about her, nor did she participate in a full arbitration regarding the defamatory statements made by Defendants.

122.   As a result of Defendants' violations of Ms. Wilt's constitutional rights which are enforceable under 42 U.S.C. § 1983, Ms. Wilt has suffered monetary and compensatory damages, including lost pay, lost benefits, lost retirement benefits, legal costs and fees, and damages for pain and suffering.

123.   Defendants' retaliatory actions impaired Ms. Wilt's professional reputation, opportunities for advancement and earning potential, caused her to suffer personal humiliation and mental anguish as result of Defendants' campaign of retaliation.

124. Retaliation against employees for the exercise of First Amendment rights and expressive association rights is willful misconduct, outside the course and scope of the duties of the Township Supervisors.

125. Defendants' violations of Ms. Wilt's Constitutional Rights were wanton, willful and malicious, thereby entitling her to punitive damages.

126. Thus, Defendants willfully violated Ms. Wilt's Constitutional Rights and Section 1983 of the Civil Rights Act when they retaliated against Ms. Wilt for exercising her First Amendment Rights and are liable to her for monetary, compensatory, and punitive damages, along with attorneys' fees and costs.

## COUNT II

### Sex Discrimination
*in Violation of Title VII of the Civil Rights Act,*
*42 U.S.C. §2000e et seq.*

127. Paragraphs 1 through 126 are incorporated herein by reference as though set forth in full.

128. Defendant Mahoning Township violated Title VII of the Civil Rights Act by discriminating against Ms. Wilt because of her sex (female).

129. Ms. Wilt was the only full-time female employee (except for the female police officer who is a member of a different union) employed with the Defendant, Mahoning Township, as more fully outlined herein.

130.   Ms. Wilt was subject to disparate treatment because of her sex, including being paid significantly less than her male counterparts in salary and bonus, and being harassed because of her sex as more fully outlined herein.

131.   Therefore, Defendant Mahoning Township discriminated against Ms. Wilt because of her sex in violation of Title VII of the Civil Rights Act.

132.   Defendant Mahoning Township engaged in the discriminatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Ms. Wilt's statutory civil rights protected by federal and state law.

133.   As a direct and proximate result of Defendant's actions and omissions, Ms. Wilt has suffered and will continue to suffer loss of employment, lost wages, lost bonuses, damage to her career and earning capacity, mental anguish, anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

## COUNT III

### *Sex Discrimination*
### *in Violation of the Pennsylvania Human Relations Act,*
### *43 Pa.C.S.A. §951 et seq.*

134.   Paragraphs 1 through 133 are incorporated herein by reference as though set forth in full.

135. Defendant Mahoning Township violated the Pennsylvania Human Relations Act by discriminating against Ms. Wilt because of her sex (female).

136. Ms. Wilt was the only female employee with the Defendant, Mahoning Township, as more fully outlined herein.

137. Ms. Wilt was subject to disparate treatment because of her sex, including being paid significantly less than her male counterparts in salary and bonus, as more fully outlined herein.

138. Therefore, Defendant Mahoning Township discriminated against Ms. Wilt because of her sex in violation of the PHRA.

139. Defendant Mahoning Township engaged in the discriminatory conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Ms. Wilt's statutory civil rights protected by federal and state law.

140. As a direct and proximate result of Defendant's actions and omissions, Ms. Wilt has suffered and will continue to suffer loss of employment, lost wages, lost bonuses, damage to her career and earning capacity, mental anguish, anxiety, personal humiliation, painful embarrassment, disruption of her personal life, and loss of enjoyment of life.

## COUNT IV

## BREACH OF CONTRACT

### *Against All Defendants, Collectively and Individually*

141. Paragraphs 1 through 140 are incorporated herein by reference as though set forth in full.

142. Ms. Wilt can state a claim against Defendants for breach of contract: (1) the existence of a contract between the plaintiff and defendant, including its essential terms; (2) a breach of duty imposed by the contract; and (3) damages resulting from that breach of duty.

143. First, the parties entered into a Contract in November 2016.

144. This Contract was entered into freely by the parties, and they agreed to abide by the terms thereof.

145. The Contract is valid: there was an offer and acceptance, consideration, and no defenses to its formation.

146. The Contract specifically requires confidentiality and non-retaliation.

147. Plaintiff relied on the Contract and released her rights to bring sexual harassment , sex discrimination, and retaliation claims against the Township and its supervisors, in reliance on the Contract.

148. Defendants have never asserted any valid defense to the Contract; there is no evidence of fraud, misrepresentation, or duress in the creation of the

agreement.  Absent fraud, misrepresentation, or duress, the parties are bound by the terms of their agreements.

149. Second, the Defendants breached their duty imposed by the contract by breaching the terms of the Agreement as more fully outlined throughout this Complaint.

150. Third, Ms. Wilt has suffered damages as a result of Defendants' breach of the Contract, as more fully outlined throughout this Complaint.

151. These damages include Ms. Wilt being retaliated against by the Township and Defendants Lynn and Scott refusing to honor the Agreement to provide Ms. Wilt with two years of back pay and equalize her wages.

152. As a result of Defendants' breaches of the Contract, Plaintiff is entitled to damages, including compensatory damages to put her into as good a position as she would have been had the other party fully performed, including substitution damages and consequential damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Kim Wilt, respectfully requests that this Court enter judgment in her favor and against the Defendant Mahoning Township, Defendant Scott, and Defendant Lynn and direct the following relief:

1. For a judgment declaring Defendant Mahoning Township violated Title VII of the Civil Rights Act;

2.    For a judgment declaring Defendants Scott and Lynn retaliated against Ms. Wilt for exercising her First Amendment rights as enforceable through Section 1983 of the Civil Rights Act;

3.    For a judgment declaring Defendants breached the settlement agreement entered into in November 2016 and breached the agreement to provide Ms. Wilt with back pay and equal wages;

4.    For a money judgment representing damages, including lost wages and benefits, future lost wages and front pay, liquidated damages, punitive damages to the extent available, and all other sums of money, including retirement benefits and other employment benefits, together with interest thereon for the Defendant's willful violations of Title VII of the Civil Rights Act, Section 1983 of the Civil Right Act, and the Pennsylvania Human Relations Act;

5.    For a money judgment representing prejudgment interest;

6.    For an Order directing Defendants pay Ms. Wilt the same pay and benefits as the male employees of the Township and to make her whole;

7.    That the Court retain jurisdiction over this action until the Defendant has fully complied with the Orders of this Court and that the Court require Defendant to file such reports as may be necessary to supervise such compliance;

8.    For the costs of suit, including an award of reasonable attorneys' fees;

9.    Fine Defendant for its violations of Title VII of the Civil Rights Act, the Pennsylvania Human Relations Act;

10.   For such other and further relief as may be just and proper, including all relief afforded to victims of discrimination and retaliation under Title VII of the Civil Rights Act, Section 1983 of the Civil Rights Act, and the Pennsylvania Human Relations Act.

RESPECTFULLY SUBMITTED

KIM WILT

BY AND THROUGH HER ATTORNEYS

/s/ Lisa Matukaitis

_____

Lisa Matukaitis, Esq.
PA Bar ID: #202467
Matukaitis Law LLC
104 STATE STREET
HARRISBURG, PA  17101
Ph. 717.412.7759
Fax 717.412.7764
lm@matlawllc.com
www.matlawllc.com

Dated:  November 3, 2017